IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JORGE HUMBERTO ZARAGOZA FUENTES, and JORGE ANTONIO ZARAGOZA VILLARDAGA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL NO. 1 9 - C V - 8 6 |
| PEDRO ZARAGOZA FUENTES, PEDRO ZARAGOZA DELGADO, ADRIANA ZARAGOZA DE OROZCO, CLAUDIA PATRICIA ZARAGOZA DELGADO, WENDY AIMEE ORTIZ PORTILLO, OSCAR HOLGUIN ROJAS, LUCILA ARRAS DIAZ, JOSE NEMORIO LOPEZ LEON, DONATO ESTEBAN RAMOS BORUNDA, JUAN RAMON MORALES, PETER HARLAND BEUDEN, and CC RESTAURANT, LP, dba "CAFÉ CENTRAL," | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Come now Plaintiffs Jorge Humberto Zaragoza Fuentes and Jorge Antonio Zaragoza Villardaga, and file this original complaint against Defendants Pedro Zaragoza Fuentes, Pedro Zaragoza Delgado, Adriana Zaragoza de Orozco, Claudia Patricia Zaragoza Delgado, Wendy Aimee Ortiz Portillo, Oscar Holguin Rojas, Lucila Arras Diaz, Jose Nemorio Lopez Leon, Donato Esteban Ramos Borunda, Juan Ramon Morales, Peter Harland Beuden, and CC Restaurant, LP, dba "Café Central," and for cause of action would show the Court as follows:

## NATURE OF THE ACTION

1. This action asserts federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

## INTRODUCTION

2.  This RICO action is brought against Pedro Zaragoza Fuentes and the people who have assisted him in operating his criminal enterprise.  Pedro Zaragoza Fuentes, with the assistance of codefendants and others, has operated a criminal enterprise for decades, combining what would otherwise be lawful businesses with illegal activity.  He has disguised his criminal activity and used that activity to enhance and perpetuate his businesses and the criminal enterprise.  Pedro Zaragoza Fuentes has committed criminal offenses against the Plaintiffs, the public, and the governments of Mexico and the United States of America, as set out below.

3.  The enterprise, referred to herein as the "Pedro Zaragoza Group," has brought and continues to bring its illegal income into the United States to hide that income and further invest in the enterprise.

4.  Beginning approximately ten years ago, Pedro Zaragoza Fuentes turned his criminal efforts toward the goal of divesting his brother of his rightful share of their jointly owned assets. Pedro Zaragoza Fuentes used and continues to use a variety of criminal activities to gain financial and business advantage over his brother Jorge Humberto Zaragoza Fuentes and his nephew Jorge Antonio Zaragoza Villardaga, whose property and businesses have in fact suffered significant financial losses.

5.  The illegal acts set out in the Factual Allegations qualify as RICO predicate acts, and establish a continuing pattern of racketeering activity dating back to the 1980's and continuing to the present.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and

§1367 because this action is based on a federal statutory cause of action.

6. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b)(1) and (2) because some of the defendants are residents of the Western District of Texas and a substantial part of Defendants' illegal conduct occurred in the Western District of Texas and affected Plaintiffs in the Western District of Texas.

## THE PARTIES

7.  Plaintiff JORGE HUMBERTO ZARAGOZA FUENTES is a citizen of the United States and a resident of New Mexico, who has business offices in El Paso, Texas.

8. Plaintiff JORGE ANTONIO ZARAGOZA VILLARDAGA is a citizen of the United States and a resident of New Mexico, who has business offices in El Paso, Texas.

9. Defendant PEDRO ZARAGOZA FUENTES is a citizen of Mexico and was previously a resident of the State of Texas during some of the conduct alleged in this Complaint.  He can be served at 8000-1 Airport Road, Santa Teresa, New Mexico, 88008, or any other place he may be found.

10. Defendant PEDRO ZARAGOZA DELGADO is a United States citizen[1] and resides in the State of Florida.  He was a resident of the State of Texas during some of the conduct alleged in this Complaint.  He can be served at 1425 Brickell Avenue, Unit 48E, Miami, Florida, 33131-3402, or any other place he may be found.

11. Defendant ADRIANA ZARAGOZA DE OROZCO aka ADRIANA ZARAGOZA

---

[1] In the summer of 2017, Pedro Jr. became a naturalized United States citizen.  Plaintiffs believe that Pedro Jr. failed to truthfully disclose to the U.S. Immigration and Citizenship Services that his criminal case in Culiacan, Sinaloa, Mexico, was still pending at the time of his naturalization, thus obtaining his citizenship through fraud, in violation of 18 U.S.C. § 1425.

DELGADO is a United States citizen and a resident of El Paso, Texas. She can be served at 5924 Ojo De Agua Drive, El Paso, Texas, 79912, or 416 N. Stanton Avenue, Ste. 7B, El Paso, Texas, 79901, or any other place she may be found.

12. Defendant CLAUDIA PATRICIA ZARAGOZA DELGADO aka CLAUDIA PATRICIA ZARAGOZA is a resident of El Paso, Texas. She can be served at 6284 Wildwood Court, El Paso, Texas, 79912, or any other place she may be found.

13. Defendant WENDY AIMEE ORTIZ PORTILLO is a citizen of Mexico and a resident of Ciudad Juarez, Chihuahua, Mexico. She can be served at Calle Paseo de Nogal #4800-40, Fracc. Paseo de los Nogales, C.P. 32668, Ciudad Juarez, Chihuahua, Mexico, or any other place she may be found.

14. Defendant OSCAR HOLGUIN ROJAS is a citizen of Mexico and a resident of Ciudad Juarez, Chihuahua, Mexico. He can be served at Puesta de San Carlos # 8850, Col. Puesta del Sol, Ciudad Juarez, C.P. 32340, Chihuahua, Mexico, or any other place he may be found.

15. Defendant LUCILA ARRAS DIAZ is a citizen of the United States and a resident of El Paso, Texas. She can be served at 1041 Calle Parque Drive, El Paso, Texas, 79912, or any other place she may be found.

16. Defendant JOSE NEMORIO LOPEZ LEON is a resident of El Paso, Texas. He can be served at 6006 Balcones Court, #33, El Paso, Texas 79912, or any other place he may be found.

17. Defendant DONATO ESTEBAN RAMOS BORUNDA is a citizen of Mexico and a resident of the United States. He can be served at 39 Sun Point Lane, El Paso, Texas, 79912, or any

other place he may be found.

18. Defendant JUAN RAMON MORALES is a citizen of Mexico and a resident of Ciudad
    Juarez, Chihuahua, Mexico.  He can be served at Calle Mision de San Miguel, # 1597, Fracc.
    Los Frailes, Ciudad Juarez, Chihuahua, Mexico, or any other place he may be found.

19.  Defendant PETER HARLAND BEUDEN is a resident of Santa Teresa, New Mexico.  He
    can be served at 8000-20 Airport Road, Santa Teresa, New Mexico, 88008, or any other
    place he may be found.

20. Defendant CC RESTAURANT, LP dba "CAFÉ CENTRAL" is a Texas limited partnership,
    whose principal place of business is 109 N. Oregon St., Ste. 214, El Paso, Texas, 79901.  It
    can be served through its registered agent, Adriana Zaragoza de Orozco at 5924 Ojo De Agua
    Drive, El Paso, Texas, 79912, or 416 N. Stanton, Ste. 7B, El Paso, Texas, 79901, or any other
    place she may be found.

## FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

**The Enterprise**

21. The RICO enterprise is an association-in-fact of Pedro Zaragoza Fuentes and the persons
    who assist him in managing his business and criminal empire, including but not limited to,
    Pedro Zaragoza Delgado, Adriana Zaragoza de Orozco, Claudia Patricia Zaragoza Delgado,
    Wendy Aimee Ortiz Portillo, Oscar Holguin Rojas, and Lucila Arras Diaz.  For the purposes
    of this lawsuit, the Enterprise will be identified as the "Pedro Zaragoza Group," and refers to
    this group of individuals that have operated and continue to operate the business and criminal
    empire of Pedro Zaragoza Fuentes.

22. While they do not form a legal entity, this group has a definite structure and each person has

a specific role in the Pedro Zaragoza Group. They are the inner circle, put in their position because of their loyalty to Pedro Zaragoza Fuentes.  The businesses that are managed by the Pedro Zaragoza Group include, but are not limited to the companies listed in paragraphs 36-51 of this Complaint.

23. The Pedro Zaragoza Group operates in Mexico and the United States, and engages in commerce in both Mexico and the United States.  The Pedro Zaragoza Group therefore affects interstate and foreign commerce.

**The Culpable "Persons"**

24. PEDRO ZARAGOZA FUENTES (hereinafter referred to as "Pedro Sr.") is the leader of the Pedro Zaragoza Group.  He is the older brother of Plaintiff Jorge Humberto Zaragoza Fuentes ("Jorge Sr."), the uncle of Plaintiff Jorge Antonio Zaragoza Villardaga ("Jorge Jr."), and the father of Defendants Pedro Zaragoza Delgado, Adriana Zaragoza de Orozco, and Claudia Patricia Zaragoza Delgado.  Every person in the Pedro Zaragoza Group reports to Pedro Sr., who has ultimate authority on every decision and action of the Pedro Zaragoza Group.

25. PEDRO ZARAGOZA DELGADO (hereinafter referred to as "Pedro Jr.") is a member of the management of the Pedro Zaragoza Group, and is a shareholder in several companies that are managed by the Pedro Zaragoza Group.  Pedro Jr. has held positions of authority in several of the companies managed by the Pedro Zaragoza Group, and has carried out the business of the Pedro Zaragoza Group.  He signs legal documents on behalf of the Pedro Zaragoza Group.

26. ADRIANA ZARAGOZA DE OROZCO (hereinafter referred to as "Adriana") is also known as Adriana Zaragoza Delgado, Adriana Zaragoza, and Adriana Orozco.  She is a member of

the management of the Pedro Zaragoza Group, and is a shareholder in several companies that are managed by the Pedro Zaragoza Group.  Adriana has held positions of authority in several of the companies managed by the Pedro Zaragoza Group, and has carried out the business of the Pedro Zaragoza Group.  She signs legal documents on behalf of the Pedro Zaragoza Group.  Adriana is also responsible for overseeing the investment in the United States of funds generated by the Pedro Zaragoza Group in Mexico.  Adriana is a partner in CC Restaurant, LP, dba "Café Central."

27. CLAUDIA PATRICIA ZARAGOZA (hereinafter referred to as "Pati") is a member of the management of the Pedro Zaragoza Group, and is a shareholder in several companies that are managed by the Pedro Zaragoza Group.  Pati has held positions of authority in several of the companies managed by the Pedro Zaragoza Group, and has carried out the business of the Pedro Zaragoza Group.  She signs legal documents on behalf of the Pedro Zaragoza Group.

28. WENDY AIMEE ORTIZ PORTILLO is an attorney for the Pedro Zaragoza Group.  She has held positions of authority in several of the companies managed by the Pedro Zaragoza Group, and has carried out the business of the companies managed by the Pedro Zaragoza Group.  She has assisted the Pedro Zaragoza Group in perpetrating a variety of fraudulent activities listed below.  She signs legal documents on behalf of the Pedro Zaragoza Group.

29. OSCAR HOLGUIN ROJAS has worked as an accountant for the Pedro Zaragoza Group.  He helped organize and implement various fraudulent activities that were designed to divest Plaintiffs Jorge Sr. and Jorge Jr. of their property.  He has signed legal documents on behalf of the Pedro Zaragoza Group.

30. LUCILA ARRAS DIAZ is an accountant for the Pedro Zaragoza Group.  She has held

positions of authority for various companies managed by the Pedro Zaragoza Group, and has carried out the business of the group. She signs legal documents on behalf of the Pedro Zaragoza Group. She has also assisted with the investment of illegal income of the Pedro Zaragoza Group in the United States.

31. JOSE NEMORIO LOPEZ LEON is a retired banker who is in charge of the movement of funds for the Pedro Zaragoza Group, particularly in offshore bank accounts. He assists in carrying out the business of the Pedro Zaragoza Group, by laundering illegal proceeds of the racketeering activity of the Group. He signs legal documents on behalf of the Pedro Zaragoza Group.

32. DONATO ESTEBAN RAMOS BORUNDA is Pedro Sr.'s brother-in-law. As such, he is in a position of confidence with Pedro Sr. and has had a variety of duties supporting the Pedro Zaragoza Group. He signs legal documents on behalf of the Pedro Zaragoza Group.

33. JUAN RAMON MORALES is the financial director for the Pedro Zaragoza Group. He assists the Group with financing matters and carries out the business of several companies managed by the Pedro Zaragoza Group. He signs legal documents on behalf of the Pedro Zaragoza Group.

34. PETER HARLAND BEUDEN is a pilot who has worked for Pedro Sr. since 1986. He has also held a variety of positions with U.S. companies managed by the Pedro Zaragoza Group, and has carried out the business of the Group in the United States. He signs legal documents on behalf of the Pedro Zaragoza Group.

35. CC RESTAURANT, LP, is a Texas limited partnership formed to operate the Café Central in El Paso, Texas. CC Restaurant assists with the investment and movement of illegal proceeds

from the racketeering activity of the Pedro Zaragoza Group.

**The Involved Businesses**

36. Inmobiliaria Pejorza, S.A. de C.V., is a Mexican corporation that holds and manages real estate.  It is controlled by the Pedro Zaragoza Group.

37. Super's Rapiditos Bip Bip, S.A. de C.V. (hereinafter referred to as "Rapiditos"), is a Mexican corporation that operates gas stations in Mexico.  It is owned by members of the Pedro Zaragoza Group.

38. Cremeria del Yaqui, S.A. de C.V., is a Mexican Corporation that operates a pasteurizing plant in Ciudad Obregon, Sonora, Mexico.  It is owned by members of the Pedro Zaragoza Group.

39. Pasteurizadores de los Productores de Leche, S.A. de C.V. (hereinafter referred to as "PPL"), is a Mexican corporation that operates a pasteurizing plant in Chihuahua, Chihuahua, Mexico.  It is controlled by the Pedro Zaragoza Group.

40. Union de Productores de Leche Queretaro, S.A. de C.V. (hereinafter referred to as "UPL"), is a Mexican corporation that operates a pasteurizing plant in Queretaro.  It is controlled by the Pedro Zaragoza Group.

41. Corporacion de Plasticos Industriales del Norte, S.A. de C.V. (hereinafter referred to as "COPLIN del Norte"), is a Mexican corporation that produces plastic containers for dairy products.  Its plant in Chihuahua, Chihuahua, Mexico, is controlled by the Pedro Zaragoza Group.  Its plant in Reynosa, Tamaulipas, Mexico, is not operational and is currently under the control of the Pedro Zaragoza Group.

42. Rancho Productor de Leche Zaragoza Hermanos, S.A. de C.V. (hereinafter referred to

"Rancho Productor"), is a Mexican corporation that operates a dairy farm in Delicias, Chihuahua, Mexico.  It is controlled by the Pedro Zaragoza Group.

43. Transportadora Agroindustrial Pejorza, S.A. de C.V., is a Mexican corporation that provided transportation services to companies in the dairy industry.  It is controlled by the Pedro Zaragoza Group.

44. Transportes Liderlac, S.A. de C.V., is a Mexican corporation that provides transportation services to companies in the dairy industry.  It is controlled by the Pedro Zaragoza Group.

45. Operadora de Restaurantes Arezzo, S.A. de C.V., is a Mexican corporation that operates restaurants in Mexico, including La Diana, in Ciudad Juarez, Chihuahua, Mexico.  It is controlled by the Pedro Zaragoza Group.

46. Operadora de Hoteles Pejorza, S.A. de C.V., is a Mexican corporation that operates the Hotel Mesaluna in Ciudad Juarez, Chihuahua, Mexico.  It is controlled by the Pedro Zaragoza Group.

47. Red Coral, Inc., was a corporation organized in the British Virgin Islands, for the purpose of holding assets of the Pedro Zaragoza Group.  It was controlled by the Pedro Zaragoza Group.

48. Zareli, Ltd., is a Texas limited partnership and owns real estate in El Paso, Texas.  It is controlled by the Pedro Zaragoza Group.

49. Zuka, LLC, is a Texas limited liability company that is the general partner of Zareli, Ltd., and is controlled by the Pedro Zaragoza Group.

50. Zuly, LLC, is a Nevada limited liability company that owns Zuka, LLC.  It is controlled by the Pedro Zaragoza Group.

51. Border Logistics, LLC, was a New Mexico limited liability company that held some real

estate investments of the Pedro Zaragoza Group and was controlled by the Pedro Zaragoza Group.

52. Union de Ganaderos Lecheros, S.A. de C.V. (hereinafter referred to as "UGL"), is a Mexican corporation that operates pasteurizing plants in Ciudad Juarez, Chihuahuha (the Lucerna), and San Luis Potosi, San Luis Potosi, Mexico.

**The Historical Background of the Pedro Zaragoza Group**

53. In the early 1970's, Pedro Sr. and Jorge Sr. assumed operations of the dairy business started by their father.  For many years, they both worked in the business, with Pedro Sr. controlling and operating the pasteurization plants and Jorge Sr. overseeing the cattle ranches and dairies.  Even before Pedro Sr. began his plan to divest his brother Jorge Sr. of their jointly owned assets, Pedro Sr. was using illegal methods to supplement the profits of his business empire.

Fraud in the milk industry and associated money laundering

54. In the 1980's, Pedro Sr. began to expand his business through illegal means, which included fraudulently producing and marketing adulterated milk, and laundering the proceeds of the fraud.  Pedro Sr.'s money laundering activities included laundering illegal drug proceeds for his brother-in-law, Rafael Aguilar Guajardo, who was a notorious drug trafficker in Northern Mexico at the time.

55. Pedro Sr.'s scheme to defraud consumers of dairy products in Northern Mexico was perpetrated by his creation of adulterated milk, referred to as "*leche extra."*  He created the *leche extra* by purchasing vegetable oil and whey in the United States, illegally importing it into Mexico, and mixing it into actual milk, according to a recipe.  The product was sold in Northern Mexico as pure milk. The milk consumers of Northern Mexico were defrauded and

suffered financial damage as well as health risks due to the illegal scheme of Pedro Sr. Plaintiffs believe that Pedro Sr. has continued this fraudulent adulteration of milk at some of his pasteurization plants through at least 2018.

56. Under Pedro Sr.'s direction, the proceeds of the adulterated milk were transported to the United States in cash by Defendant Ramos and others, to hide the illegal income in United States banks, in violation of 18 U.S.C. §§ 1956 and 1957. The proceeds were purposefully broken down into deposits of less than $10,000, to avoid the reporting requirements at the international border and at American banks, in violation of 31 U.S.C. §§ 5316 and 5324. When the balances at the American banks grew high, Pedro Sr. would direct that the money be moved to other accounts. In later years, the money would be moved to offshore accounts to avoid the attention of American authorities and to hide the money from Jorge Sr. Plaintiffs believe that the illegal proceeds brought into the United States and later moved to offshore accounts rose to at least $100 million. Plaintiffs believe that these funds are currently located in unknown offshore accounts managed by the Pedro Zaragoza Group. Defendant Lopez assists the Group by managing and investing the illegal proceeds in foreign bank accounts, in violation of 18 U.S.C. §§ 1956 and 1957.

Criminal suppression of competition in the milk industry

57. In the early 1990's, after the passage of NAFTA, American dairy businesses, including Price's Dairies from El Paso, Texas, began sales operations in Northern Mexico. In order to maintain his dominance in the milk market in Northern Mexico, Pedro Sr. directed acts of violence against Price's Dairies, including the assault of the driver of a milk truck and the arson of a Price's milk truck. Ultimately, the American dairy providers were intimidated out of the market in Northern Mexico, all in violation of 18 U.S.C. § 1951.

**The Predicate Acts**

58. Pedro Sr. and the Pedro Zaragoza Group embarked on a campaign to turn the illegal racketeering activities against Jorge Sr., in an attempt to divest Jorge Sr. of all assets. Pedro Sr., assisted by his codefendants, engaged in multiple schemes to defraud Jorge Sr. and Jorge Jr. to prevent Jorge Sr. and Jorge Jr. from having access to their assets and the income from those assets. As part of the effort to divest Jorge Sr. of his patrimony, Pedro Sr. directed acts of intimidation, including arson, assault, robbery, kidnapping, and attempted murder.

59. The following criminal offenses qualify as predicate acts of racketeering under RICO, as defined in 18 U.S.C. § 1961(1), and were committed as part of a continuing pattern of criminal conduct.

Fraud in the division of assets

60. In 2008, Pedro Sr. communicated to Jorge Sr. his desire to divide the majority of their jointly owned assets. The proposal was to negotiate a reasonable and fair division of the assets. However, Pedro Sr.'s true intent was to induce his brother to give up his share of certain assets and to increase Pedro Sr.'s control of their jointly owned assets to the end of divesting Jorge Sr. of his share of the patrimony. Pedro Sr. and the Pedro Zaragoza Group designed and executed a scheme and artifice to defraud Jorge Sr. and Jorge Jr., and used email and telephone communications to perpetrate the fraud, in violation of 18 U.S.C. § 1343.

61. One of the ways the fraud was committed was to induce Jorge Jr. to transfer certain properties in anticipation of the division of assets. Pedro Sr. and Jorge Sr. were the sole shareholders of Inmobiliaria Pejorza, which held many of their properties that were to be allocated between them. Certain parcels of real estate jointly held by Pedro Jr. and Jorge Jr. in Ejido San Isidro and Ejido Zaragoza in Ciudad Juarez, Chihuahua, Mexico, were

transferred from their individual ownership to Inmobiliaria Pejorza.  The transfer was requested by the Pedro Zaragoza Group and was for the supposed purpose of consolidating the real estate holdings that were to be divided between the brothers.  The representation that the properties would be part of a fair property division agreement was a fraudulent representation designed to induce Jorge Jr. to sign the titles to the properties over to Inmobiliaria Pejorza.

62. In 2008 and 2009, shortly prior to each title transfer, and in furtherance of the scheme and artifice to defraud, Defendant Ortiz communicated with Jorge Jr. over the phone for the purpose of arranging a meeting.  At each of these several meetings, she traveled to Jorge Jr.'s home in Santa Teresa, New Mexico, having him sign documents to transfer the following parcels of land to Inmobiliaria Pejorza.

| Parcel Number | Value[2] (In US Dollars) | Date of Transfer[3] |
|---|---|---|
| Ejido San Isidro | | |
| 134 | $629,961.12 | |
| 135 | $899,116.79 | August 28, 2009 |
| 153 | $899,123.54 | August 28, 2009 |
| 166 | $899,117.87 | |
| 185 | $899,116.70 | August 28, 2009 |
| 188 | $899,112.42 | |
| 193 | $899,117.58 | August 31, 2009 |
| Ejido Zaragoza | | |
| 497 | $210,195.90 | |
| 500 | $210,055.97 | September 18, 2009 |
| 501 | $1,750,693.88 | September 18, 2009 |
| 505 | $201,149.24 | |
| 517 | $4,256,319.47 | |
| 523 | $6,794,704.67 | July 30, 2008 |
| 524 | $7,766,077.20 | June 27, 2008 |
| 525 | $8,746,879.28 | June 27, 2008 |

---

[2] These are the estimated values assigned by the Pedro Zaragoza Group in April 2009.
[3] Where this column is blank, the date of transfer was not available at the time this Complaint was filed.

| | | |
|---|---|---|
| 526 | $6,104,112.44 | May 19, 2009 |
| 533 | $4,629,236.98 | June 27, 2008 |
| 534 | $4,625,524.38 | July 30, 2008 |
| 535 | $7,319,865.20 | July 30, 2008 |
| 536 | $8,143,237.76 | July 30, 2008 |
| 537 | $7,500,910.05 | December 12, 2008 |
| 768 | $406,265.85 | December 12, 2008 |
| 769 | $318,086.65 | |
| 771 | $81,761.76 | |
| 772 | $82,249.29 | April 28, 2009 |
| 774 | $81,694.89 | July 30, 2008 |
| 775 | $81,731.16 | April 28, 2008 |
| 776 | $81,666.36 | July 30, 2008 |
| 777 | $82,081.98 | June 24, 2009 |
| 778 | $81,371.52 | July 30, 2008 |
| 779 | $81,838.17 | December 12, 2008 |
| 780 | $81,924.21 | June 30, 2008 |
| 781 | $81,956.61 | July 30, 2008 |
| 782 | $48,677.65 | July 30, 2008 |
| 783 | $4,307.20 | |
| Total | $75,879,241.70 | |

63. On October 15, 2009, Pedro Sr. and Jorge Sr. entered into a written agreement for the division of assets ("the Agreement").[4]  This Agreement was one of the most fundamental parts of the scheme and artifice to defraud, because it included provisions to distribute assets that were meant to mislead Jorge Sr. and induce him to transfer assets, to his detriment.  Most of the terms of this Agreement were not kept.

64. Defendant Arras and others, on behalf of the Pedro Zaragoza Group, communicated by email to representatives of Jorge Sr. regarding the Agreement to divide assets. These emails were in furtherance of the scheme to defraud Jorge Sr. by causing him to believe that the terms of the negotiated agreement would be followed and the assets would be fairly divided.  In

---

[4] This agreement is entitled "*Promesa de Ecision*" and is attached (in its original form and also translated into English) to this Complaint as Exhibit A.

furtherance of the scheme to defraud, the following emails were sent by Defendants Arras

and Morales, on behalf of the Pedro Zaragoza Group, on the dates indicated below:

| Date | Participants | Subject Line |
|---|---|---|
| September 18, 2009 | Lucila Arras to Jorge Sr. and Jorge Jr. | Informacion para el Sr. Jorge Zaragoza Fuentes |
| September 28, 2009 | Lucila Arras to Mario Corea[5] | Informacion Sr. Mendoza |
| October 5, 2009 | Lucila Arras to Mario Corea | Informacion Sr. Mendoza |
| November 19, 2009 | Lucila Arras to Mario Corea | Informacion Sr. Gamez |
| December 1, 2009 | Lucila Arras to Mario Corea | Actas de Asamblea. |
| December 10, 2009 | Juan Ramon Morales to Lucila Arras, cc to Mario Corea | |
| December 14, 2009 | Lucila Arras to Mario Corea | Relacion de Pendientes. |
| December 14, 2009 | Lucila Arras to Mario Corea | Mas Informacion. |
| January 7, 2010 | Lucila Arras to Mario Corea | Acta y Contrato GPO. |
| January 8, 2010 | Lucila Arras to Mario Corea | Informacion Sr. Mendoza. |
| January 11, 2010 | Lucila Arras to Aracely Medina | Saldo de Gpo |
| January 14, 2010 | Lucila Arras to Mario Corea | Documento para el Sr. Mendoza |
| January 20, 2010 | Lucila Arras to Mario Corea | Actas y Contratos de Carnes y Mariscos. |
| May 8, 2010 | Lucila Arras to Mario Corea | Relacion de Inmuebles. |
| May 28, 2010 | Lucila Arras to Mario Corea | Informacion Sr. Mendoza. |
| February 3, 2011 | Lucila Arras to Mario Corea | Informacion Sr. Mendoza. |

65. Jorge Sr. transferred several assets to Pedro Sr. pursuant to the Agreement, including his

forty-nine percent interest in Rapiditos.[6]  Additional assets were later included in the

negotiations and set out in an addendum to the Agreement ("the Addendum"), executed by

the brothers on October 4, 2010.[7]  Although Pedro Sr. transferred some assets, he refused to

transfer other assets and declared that he would not honor the written agreements he had

---

[5] Mario Corea and Mr. Mendoza worked for the brothers until January 2012 and have worked for Jorge Sr. and Jorge Jr. since then.

[6] On Pedro Sr.'s direction, Jorge Sr. transferred his 49% ownership interest to Pedro Jr.

[7] The Addendum is attached as Exhibit B in its original form and translated into English.

made with his brother.

66. Without having divided the assets held by Inmobiliaria Pejorza as promised, on November 24, 2010, the Pedro Zaragoza Group fraudulently increased Pedro Sr.'s capital in Inmobiliaria Pejorza, by transferring ownership of his residence and business property to Inmobiliaria Pejorza. This purported increase in capital was fraudulent because: (1) the property had been acquired with jointly owned assets, and could not, therefore, be credited to Pedro Sr.'s capital; (2) the value of the property was vastly overstated, to fraudulently overstate the infusion of capital; and (3) the shareholder meeting where the increase in capital was accepted was not attended by Jorge Sr., but the records were fraudulently altered so that it would appear that Jorge Sr. was in attendance.  Defendant Arras was an officer of the company and assisted in this fraud. Defendant Ramos participated in the scheme to defraud by falsely testifying in a Mexican court that Jorge Sr. had been at the shareholder meeting when the fraudulent increase in capital occurred. Defendant Ramos committed this perjury to aid the Pedro Zaragoza Group with their efforts to divest Jorge Sr. of the property to which he was rightfully entitled.

67. For a time, Jorge Sr. received rental income from some of the properties that were supposed to be transferred to him under the Agreement.  The Pedro Zaragoza Group later kept all income and profits from Inmobiliaria Pejorza to invest back into the Pedro Zaragoza Group, or for the benefit of Defendants.

68. Jorge Sr. later transferred his shares in Inmobiliaria Pejorza to Jorge Jr.

69. Pedro Jr. was appointed the sole administrator of Inmoboliaria Pejorza.  During the time that he was sole administrator of the company, Inmobiliaria Pejorza collected rents and sold properties for profit, but no dividends were paid to Jorge Sr. or later to Jorge Jr.

70. Adriana later became sole administrator of Inmoboliaria Pejorza.  During the time that she was sole administrator of the company, Inmobiliaria Pejorza collected rents and sold properties for profit, but no dividends were paid to Jorge Sr. or later to Jorge Jr.

71. To date, Inmobiliaria Pejorza continues to receive income from rents and the sale of real estate, without any payment to Jorge Jr.  As recently as September 27, 2018, Inmobiliaria Pejorza, represented by Adriana and Pati, sold a parcel of land in Ciudad Juarez, Chihuahua, for $1,238,807.20 (USD).  The value of Inmobiliaria Pejorza continues to be diminished without compensation to Jorge Jr.

72. On November 26, 2018, the Pedro Zaragoza Group called a shareholders' meeting for Inmobiliaria Pejorza.  The meeting was scheduled to take place at Pedro Sr.'s compound[8] in Ciudad Juarez, Chihuahua, Mexico.  Although Jorge Jr. is a shareholder, he did not attend the meeting out of concern for his personal safety.  Besides the other acts of violence from the Pedro Zaragoza Group mentioned below, Pedro Sr. has previously been physically violent towards Jorge Jr.,[9] making the proposed meeting in his compound unreasonably dangerous.

73. Among other items on the November 26, 2018, agenda was the review of financial records for the previous ten years.  Plaintiffs believe that Defendants Pedro Sr., Adriana, and Arras, assisted by others, retroactively approved corporate actions to fraudulently disguise the income of the company.

---

[8] This compound is technically owned by Inmobiliaria Pejorza, but is controlled solely by Pedro Sr.  It is used as his home and the headquarters for the Pedro Zaragoza Group.  It is referred to here as a "compound" because it is a very large property with multiple residential and business buildings, and has a prison-like appearance, surrounded by a very high wall, electric fencing, and access restricted by armed guards.

[9] In a hallway outside of a meeting in Mexico City in March 2014, Pedro Sr. violently pushed Jorge Jr.

74. Pedro Sr. and Jorge Sr. also own substantial real estate in their names.  Their original business headquarters on the Carretera Panamerica in Ciudad Juarez, Chihuahua, Mexico, is owned jointly by Pedro Sr. and Jorge Sr.  This large piece of property was assigned to Jorge Sr. as part of the Agreement.  In violation of this term of the Agreement, Pedro Sr. has forcibly excluded Jorge Sr. since 2012.  The Pedro Zaragoza Group controls this property and makes no payment to Jorge Sr., despite the fact that it has sold some of the property, rents some of the property to third parties, and uses the other part for businesses they manage.  This is an ongoing loss to Jorge Sr. due to the illegal conduct of the Pedro Zaragoza Group.

Wire and bank fraud with Rancho Productor

75. In late 2011 Pedro Sr., with the assistance of Defendants Arras, Ortiz, and others, engaged in a scheme to defraud Jorge Sr. by fraudulently reducing Jorge Sr.'s percentage of ownership in their jointly owned company, Rancho Productor, in violation of 18 U.S.C. § 1343.

76. The only two shareholders of Rancho Productor at the time were Pedro Sr. (fifty-one percent) and Jorge Sr. (forty-nine percent).  The Pedro Zaragoza Group accomplished the scheme to defraud by injecting capital into the company, claiming that the capital injection came from Pedro Sr., when in fact the capital was obtained through loans that were then repaid from the company's assets.  One of these loans was for $2.5 million and was obtained on December 22, 2011, from a United States bank (Bank of the West, now WestStar Bank) located in El Paso, Texas.

77. This fraud was repeated in February 2012, with a similar injection of capital that was disguised to appear to belong to Pedro Sr., when in fact it was from a loan that was repaid by Rancho Productor.  Due to these injections of capital, Jorge Sr.'s ownership interest was

fraudulently diminished.  Since then, the Pedro Zaragoza Group has had sole control of Rancho Productor and has not paid dividends to Jorge Sr. or Jorge Jr. (who later received Jorge Sr.'s shares).

78. Plaintiffs believe that Pedro Sr. and others at his direction also committed bank fraud when Pedro Sr. obtained the loan from WestStar Bank in El Paso, Texas (then Bank of the West, a federally insured institution), because they did not disclose to the bank the true purpose and circumstances of the loan, in violation of 18 U.S.C. § 1344.

<u>Fraud in Transportadora Agroindustrial Pejorza</u>

79. Transportadora Agroindustrial Pejorza was owned by Pedro Sr. (fifty-one percent) and Jorge Sr. (forty-nine percent).  The company provided transportation services to the dairy industry, including the transportation of materials purchased in the United States (whey, oil, alfalfa and plastic materials) from the United States to Mexico for the use of the various companies owned by the Zaragoza brothers.  The company owned tractors and trailers titled in the company name.

80. Beginning in 2012, Pedro Sr., and others in the Pedro Zaragoza Group acting at his direction executed a scheme to defraud Jorge Sr. with the purpose of looting the assets of Transportadora Agroindustrial Pejorza, in violation of 18 U.S.C. § 1343.  The Pedro Zaragoza Group sold the assets of Transportadora Agroindustrial Pejorza and purchased new equipment with the proceeds.  However, the new equipment was titled in the name of a different company, Transportes Liderlac, a company owned by Pedro Sr. and Pedro Jr.  This illegal fraud reduced the value of Jorge Sr.'s interest as a shareholder in the company to zero.

<u>Aggravated assault and kidnapping of Jose Guadalupe Avila Moran</u>

81. On January 19, 2012, Jose Guadalupe Avila Moran was the victim of an aggravated assault

and kidnapping committed by Pedro Sr., and others under his direction.  Mr. Avila had been

the Director of Sales for the pasteurization plants owned by Pedro Sr. and Jorge Sr. and other

investors until December 26, 2011, when he was fired by the Pedro Zaragoza Group due to

his perceived loyalty to Jorge Sr.

82. On January 19, 2012, Mr. Avila was in the offices of Jorge Sr., in Ciudad Juarez, to discuss

future employment. In an effort to intimidate anyone that would work for Jorge Sr., and

thereby disrupt any business conducted by Jorge Sr., Pedro Sr., assisted by others working

for the Pedro Zaragoza Group, removed Mr. Avila from the office of Jorge Sr. in Ciudad

Juarez, Chihuahua, Mexico, at gun point.

83. Mr. Avila was approached by Pedro Sr. and a group of his guards that were armed with rifles.

Several of Pedro Sr.'s guards began to assault Mr. Avila then forced him to walk out of the

building, down the very long driveway, and out to the street. Mr. Avila was surrounded by

bodyguards and armed men as he was forced off the property.

84. During the time that Mr. Avila was held at gunpoint, he was physically restrained and could

not move freely.  This constituted a kidnapping, in violation of 18 U.S.C. § 1201.  Further,

the show of force was an effort to disrupt the business conducted by Jorge Sr., in violation of

18 U.S.C. § 1951.

The armed takeover of the Lucerna

85. On November 2, 2012, Pedro Sr., assisted by Defendant Holguin and others working for the

Pedro Zaragoza Group, through violence and force, took physical control of the Lucerna

pasteurization plant in Ciudad Juarez, Chihuahua, Mexico.  The Lucerna plant at the time

was owned by UGL.  Pedro Sr. was a shareholder of UGL, but he was not a majority owner

and he did not have the legal right to exclude the other owners from the plant or exclude the

management that had been appointed by the Board of Directors.

86. Pedro Sr. accomplished the takeover through his corrupt relationship with then-Governor of Chihuahua (now fugitive) Cesar Duarte. The Pedro Zaragoza Group was able to obtain the assistance of approximately 200 state police officers who, without court order or other legal process, stormed the plant and terrorized and intimidated employees and took some into custody.[10] The takeover of the Lucerna on November 2, 2012, constituted kidnapping, robbery, and interference with commerce[11] by threats and violence in violation of 18 U.S.C. §§ 211, 120, and 1951. Jorge Sr. was a shareholder of UGL. From November 2, 2012, until May 2, 2015, Jorge Sr. was physically excluded from the plant and was not paid any dividends from its earnings.[12]

Second kidnapping and assault of Jose Guadalupe Avila Moran

87. On October 11, 2014, Jose Guadalupe Avila Moran was assaulted and kidnapped in Reynosa, Tamaulipas, Mexico. During the assault Mr. Avila was restrained and could not move freely. Mr. Avila was severely injured, and spent approximately one month in the hospital.

88. Although his attackers were not specifically identified, it was clearly done at the direction of the Pedro Zaragoza Group, because Mr. Avila was told that the assault was in retribution for his loyalty to Jorge Sr. This show of force was meant to intimidate Jorge Sr. and Jorge Jr., in an effort to disrupt their business, in violation of 18 U.S.C. § 1951.

---

[10] False charges were brought against several employees that day but were ultimately dismissed for lack of evidence.
[11] UGL was engaged in "commerce" as that term is defined in 18 U.S.C. 1951 because it purchased materials and equipment from U.S. companies.
[12] After May 2, 2015, Pedro Sr. was no longer a shareholder in UGL and it returned to the rightful control of the board and other shareholders.

Arson of the home of Filemon Cesar Mexia Favela

89. On December 15, 2014, members of the Pedro Zaragoza Group, directed by Pedro Sr.,
committed arson at the home of Filemon Cesar Mexia Favela in Ciudad Obregon, Sonora,
Mexico, in violation of 18 U.S.C. § 81.  At the time, Mr. Mexia was the plant manager at
Cremeria Yaqui, a plant jointly owned by Pedro Sr. and Jorge Sr. and other investors, but
operated by Jorge Sr. and the other investors at the time.  Members of the Pedro Zaragoza
Group, acting at the direction of Pedro Sr., committed arson at the home of Mr. Mexia,
burning his home and cars, in an attempt to intimidate him and punish him for working for
Jorge Sr. This show of force was meant to disrupt the business conducted by Jorge Sr. and
Jorge Jr., in violation of 18 U.S.C. § 1951.[13]

Attempted murder of Manuel Esteban Balderas Rojas

90. On February 26, 2015, Manuel Esteban Balderas Rojas was the victim of an attempted
murder outside of his home in Ciudad Juarez, Chihuahua, Mexico.  A man with a handgun
took several shots at Mr. Balderas, but did not hit him.  Mr. Balderas used to work for the
Zaragoza brothers, but began working for Jorge Sr., after the brothers stopped working
together.  Mr. Balderas is an attorney and had filed numerous legal actions against Pedro Sr.
and various businesses that are controlled by the Pedro Zaragoza Group.  Although the
shooter has not been identified or arrested, Plaintiffs believe that this attempted murder was
part of the pattern of intimidation and retaliation carried out by Pedro Sr. and the Pedro
Zaragoza Group against persons who work for Jorge Sr. and Jorge Jr.  This show of force
was meant to disrupt the business conducted by them, in violation of 18 U.S.C. § 1951.

---

[13] Cremeria Yaqui engaged in commerce with the United States, and therefore is protected by the
provisions of § 1951.

<u>Fraud in the acquisition of additional shares of UPL</u>

91. PPL owned approximately eighty percent of UPL, the company that operated the pasteurization plant in Queretaro.  The other twenty percent was owned by local dairy farmers.  Pedro Jr. took money out of PPL and used that money to purchase additional shares from the 20% that was not owned by PPL.  The Pedro Zaragoza Group engaged in a scheme to defraud when Pedro Jr., assisted by others in the Group, put those additional shares purchased with PPL's money in his name personally, and not in the name of PPL.

92. PPL was owned by Pedro Sr. (fifty-one percent) and Jorge Sr. (forty-nine percent).  Pedro Jr.'s use of embezzled funds from PPL to purchase shares in his name was done for the purpose of increasing the shares controlled by the Pedro Zaragoza Group and diminishing Jorge Sr.'s equity in UPL.

<u>Fraud in the acquiring of land in Queretaro</u>

93. UPL owned the land and building where the pasteurization plant in Queretaro operated.  In December 2013, Pedro Sr. put into action a plan to fraudulently gain control of that land and building.  Pedro Sr. was assisted by Pedro Jr. and Defendants Arras, Morales and others in the Pedro Zaragoza Group.

94. Pedro Sr. directed the creation of fake debts on behalf of UPL so it would look like UPL owed money to various other companies (other companies controlled by the Pedro Zaragoza Group).  Pedro Sr. directed Pedro Jr. to sell the land and building to Inmobiliaria Pejorza for approximately $3 million, which was then used to pay UPL's fake debts. However, at the time the land and building were sold, their retail value was closer to $10 million.  Defendants Arras and Morales signed checks and legal documents to effectuate this transaction, knowing

it was fraudulent.  Pedro Sr. deliberately created fake debts so he could sell the land below its value to Inmobiliaria Pejorza, which Pedro Sr. continues to illegally control.

Extortion of Jorge Sr., Romulo Escobar, and Mario Fuentes

95. In April 2015, Romulo Escobar Valdez and Mario Fuentes Varela were arrested in Mexico as part of a criminal trademark infringement case brought by the Pedro Zaragoza Group.  A warrant was also issued for Jorge Sr., who was not arrested because he was in the United States at the time.  The charges were based on false evidence presented to the prosecutor and court.  Pedro Sr., assisted by Pedro Jr., Mario Flores, and other members of the Pedro Zaragoza Group then offered to drop the false charges in exchange for money and property.

96. Defendant Ortiz participated in the extortion by assisting in drafting and communicating the agreement to drop the false criminal charges in exchange for money and property. Specifically, Defendant Ortiz sent an email on May 1, 2015, in furtherance of the extortion, discussing the terms of the agreement.

97. Defendant Morales participated in the extortion when he was sent by the Pedro Zaragoza Group to El Paso, Texas, to witness Jorge Sr. signing the documents that provided for payment for the release of Romulo Escobar and Mario Fuentes and a dismissal of the warrant outstanding against him.  Defendant Morales witnessed the signing of the agreement on May 3, 2015, at Jorge Sr.'s office at 500 W. Overland Ave., El Paso, Texas.

98. Defendants Pedro Sr., Pedro Jr., Ortiz and Morales were all aware that the underlying criminal charge against Jorge Sr., Romulo Escobar and Mario Fuentes was false, which made the demand for payment of property and money for a pardon, the crime of extortion.

99. Ultimately, on May 2, 2015, an agreement was reached whereby Pedro Sr. and Pedro Jr. received money and property from Romulo Escobar Valdez, Mario Fuentes Varela, Jorge Sr.

and Jorge Jr. in exchange for a dismissal of these criminal charges.[14]  This conduct

constituted extortion.  In fact, criminal charges for extortion were filed against Pedro Sr.,

Pedro Jr. and Mario Flores.   Pedro Jr. was arrested on extortion charges in January 2016 and

a warrant was issued for Pedro Sr.[15]

Robbery, fraud, and interference with commerce in the attempted takeover of Mexicali plant

100.    On December 21, 2015, Pedro Sr. directed the illegal entry, robbery, theft, destruction

of property and attempted takeover of the Imperial Pasteurization plant in Mexicali, Baja

California Norte, Mexico.  This business was owned and operated by Comercializadora

Agroindustrial del Norte, S.A. de C.V. ("CAN").[16]  Pedro Sr. had no ownership interest in

CAN.  However, members of the Pedro Zaragoza Group, including but not limited to

Defendants Ortiz and Holguin, devised a plan to make false and fraudulent representations to

the prosecutor for the State of Baja California Norte, which would allow persons working for

Pedro Sr. and the Pedro Zaragoza Group to enter the plant in Mexicali.

101.    While at the CAN plant, members of the Pedro Zaragoza Group, with threats of

violence, stole revenue from the sales of dairy products, and destroyed property, for the

purpose of financial gain and to disrupt the business of CAN, all in violation of 18 U.S.C. §§

211 and 1951.  Jorge Jr. was at the time and still is the majority shareholder of CAN.

Therefore, Jorge Jr. was damaged by the financial loss to CAN.

---

[14] This agreement provided that an agent of the Pedro Zaragoza Group would sign a pardon in
the court in San Luis Potosi upon payment of cash and shares in companies to the Pedro
Zaragoza Group.  Pedro Sr. and Pedro Jr., gained millions of dollars in the transaction, which
was payment for the dismissal of the false criminal charges.
[15] Pedro Jr. was released in March 2016. However, his release was based on evidence that was
later determined to be false. Charges are currently pending against the witness who provided the
false evidence.
[16] This company operates in Mexico but is engaged in commerce with the United States.

Robbery and interference with commerce at the COPLIN Del Norte plant in Reynosa

102.    In 2017, Jorge Sr. and Jorge Jr. began to make repairs to the COPLIN Del Norte plant in Reynosa, with the intention of opening the plant and using it to produce plastic containers for dairy products.[17] As part of this effort, Plaintiffs purchased equipment and parts in the United States. Once the plant was operational, Plaintiffs were going to be purchasing the raw materials in the United States which would be used to produce the plastic containers.

103.    On February 17, 2018, only weeks before the plant was set to open, Pedro Sr. sent several armed men to enter the plant through force. The guards employed by the Plaintiffs to watch over the plant were threatened and forced to leave the plant immediately.  When an attorney working for Jorge Sr. and Jorge Jr. arrived to the plant to assert their rights, she was also threatened by the armed men.  Without any legal process or right, members of the Pedro Zaragoza Group forcibly took possession of the plant.  They committed robbery because they removed the equipment from the plant by force, in violation of 18 U.S.C. § 211.  Further, this incursion into the COPLIN plant in Reynosa was for the specific purpose of preventing the plant from opening and engaging in international and interstate commerce, in violation of 18 U.S.C. §1951.  Since Jorge Jr. had the legal right to operate this plant, he suffered financial losses from his investment to make the plant operational and his inability to operate it.

Dishonest negotiation efforts

104.    Since 2012, Pedro Sr. and his agents have repeatedly and falsely communicated a desire to negotiate a resolution to this dispute. There have been over fifty meetings with the supposed purpose of negotiating a resolution to the dispute between the brothers.  In reality,

---

[17] COPLIN Del Norte was owned by both Pedro Sr. and Jorge Sr.  Jorge Sr. transferred his shares to Jorge Jr., who obtained a court order that allowed him to control the plant in Reynosa.

Pedro Sr. has never negotiated in good faith. Pedro Sr. has pretended to negotiate to delay Jorge Sr.'s efforts to seek redress and to prolong Pedro Sr.'s wrongful control of (and income from) jointly owned assets.

**Other predicate acts used to finance the oppression of Jorge Sr. and Jorge Jr.**

<u>Fraud in the retail gas industry and associated money laundering</u>

105.    The Pedro Zaragoza Group, specifically Pedro Sr., assisted by Pedro Jr. and Adriana and Defendant Arras, also perpetrated a scheme to defraud the Mexican government and public consumers of gas, through the Rapiditos gas stations he controls. The scheme to defraud involved two different aspects of criminal conduct. First, Pedro Sr. directed the company to purchase gas that had been stolen by PEMEX employees. This gas was purchased by Rapiditos for sixty-five percent (65%) of the price set by PEMEX. This discounted stolen gas is referred to in documents kept by the company as "*Chino*" gas.

106.    Pedro Sr. also directed that the measures on the gas pumps be altered to show the sale of a liter of gas, when the amount dispensed was less than one liter.[18] The proceeds of this fraud were referred to in company documents as "*Gillette.*"

107.    To ensure the successful perpetration of this fraud on the consumer, Pedro Sr. directed the payment of monthly bribes to an official at PROFECO[19], which is the Mexican agency charged with verifying the accuracy of weights and measures at gas stations in Mexico. The proceeds of these illegal activities at Rapiditos were transferred to the United States at the direction of Pedro Sr., to disguise the illegal source of those funds, in violation of 18 U.S.C. §§ 1956 and 1957. These illegal funds were hidden in U.S. banks, and used to pay various

---

[18] The degree of the fraud varied over time, starting at 3.5%, and rising to 10%.
[19] PROFECO is the *Procuradoria Federal de Consumidor*.

personal and family expenses in the United States.  The funds were also reinvested in the Pedro Zaragoza Group, and used to finance, among other things, the campaign to divest Jorge Sr. and Jorge Jr. of their assets.

**Investment of proceeds in the United States**

<u>Investment of illegal funds in the Café Central</u>

108.    Approximately $600,000 was loaned to Adriana by a company jointly owned by Pedro Sr. and Jorge Sr. in 2008 to purchase the Café Central restaurant in El Paso, Texas.  The loan was repaid by CC Restaurant, LP, in monthly payments to Pedro Sr.'s personal bank account. CC Restaurant, LP, is managed by the Pedro Zaragoza Group, and has assisted in the defrauding of Jorge Sr. and Jorge Jr. by investing the proceeds of its racketeering activity.

<u>Investment in New York City</u>

109.    The Pedro Zaragoza Group formed Paradeplatz, LTD., a New York corporation, in 2008. On May 15, 2009, the Pedro Zaragoza Group, through Paradeplatz, LTD., purchased a condominium in the Plaza Hotel in New York City for $11,786,455. At the time of the purchase, Paradeplatz, LTD. took out a mortgage on the condominium for $6,650,000. That mortgage was fully paid and the lien was released on July 26, 2013. The Pedro Zaragoza Group sold the condominium on May 15, 2015 for $17,250,000.  This investment was made with the proceeds of the racketeering enterprise and with knowledge of the racketeering activity of the Pedro Zaragoza Group.

<u>Investment in Colorado</u>

110.    The Pedro Zaragoza Group, specifically Defendant Lopez, formed Skyfall, LLC, a Colorado limited liability company in 2014. On August 14, 2014, the Pedro Zaragoza Group, through Skyfall, LLC, purchased a condominium near Aspen, Colorado for $2,231,550.  This

investment was made with the proceeds of the racketeering enterprise and with knowledge of the racketeering activity of the Pedro Zaragoza Group.

<u>Investment in the Southwestern United States</u>

111.　The Pedro Zaragoza Group formed AOL Investments, LLC, a Texas limited liability company in 2016. On May 15, 2018, the Pedro Zaragoza Group, through AOL Investments, LLC, purchased a piece of land in east El Paso, Texas for $2,586,452. This investment was made with the proceeds of the racketeering enterprise and with knowledge of the racketeering activity of the Pedro Zaragoza Group.

112.　The Pedro Zaragoza Group, including Adriana, has invested the income generated by the Pedro Zaragoza Group's racketeering activity into twelve restaurants in Texas, Arizona, and Nevada, including the West Texas Chophouse in El Paso, Texas, and the Café Central in El Paso, Texas.  This investment was made with the proceeds of the racketeering enterprise and with knowledge of the racketeering activity of the Pedro Zaragoza Group.

113.　The Pedro Zaragoza Group formed Tabachin Inc., a Texas corporation in 1982. In 2006, Tabachin Inc. received control of a parcel of land near the Texas-New Mexico border. In 2014, Pedro Sr. transferred the land to Border Logistics, LLC, a New Mexico limited liability company organized in 2014 by Defendant Arras. On December 21, 2018, Defendant Beuden sold the land to another company as the president of Border Logistics, LLC.  This investment was made with the proceeds of the racketeering enterprise and with knowledge of the racketeering activity of the Pedro Zaragoza Group.

**Injury to Plaintiffs' Businesses and Property**

114.　Plaintiffs have suffered enormous financial losses because they have been deprived of the use and benefit of their assets, some of which are described above.  Those losses include, but

are not limited to, lost income from properties held by Jorge Sr. individually and by Inmobiliaria Pejorza that were supposed to be transferred to Jorge Sr. under the Agreement made with Pedro Sr.  The losses also include damage to property, unpaid dividends from jointly owned companies, and lost income in the business entities that were prevented from operating.

## CAUSES OF ACTION

### Count One:
### Violations of the Racketeer Influenced and
### Corrupt Organizations Act ("RICO") § 1962(a)

115.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though set forth fully herein.

116.    This Count is against Defendants Pedro Sr., Pedro Jr., Adriana, and Pati.

<u>The Enterprise</u>

117.    The Pedro Zaragoza Fuentes Group is a Racketeering Enterprise, as that term is used in 18 U.S.C. § 1961(4), and detailed in Paragraphs 21-23.

<u>A Continuing Pattern of Racketeering Activity (RICO predicate acts)</u>

118.    There has been and still is a continuing pattern of racketeering activity in the way the Pedro Zaragoza Group is operated by the Defendants, as detailed above in Paragraphs 58-113.

<u>Specific Violations of 18 U.S.C. § 1962(a)</u>

119.    Pedro Sr., Pedro Jr., Adriana, and Pati each receive income from a pattern of racketeering; specifically, among other sources, the illegal income from Rapiditos, as set in Paragraphs 105-107, was regularly transferred to the United States and invested by these Defendants for the Pedro Zaragoza Group.  The illegally gained income from the fraud on

Jorge Sr. and Jorge Jr. is regularly received by these Defendants and reinvested in the Pedro Zaragoza Group. These Defendants each had knowledge of the fraud that generated that illegal income, and knowingly participated in the fraud and the investment of that income.

RICO Damages

120.    As a direct and proximate result of the Defendants' violations of 18 U.S.C. § 1961 *et seq.*, Plaintiffs have been injured in their business and property.  Defendants caused and continue to cause enormous loss to Plaintiffs and Plaintiffs' business, as described above in Paragraph 112.

**Count Two:
Violations of RICO § 1962(b)**

121.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though set forth fully herein.

122.    This Count is against Defendants Pedro Sr., Pedro Jr. Adriana, and Pati.

The Enterprise

123.    The Pedro Zaragoza Fuentes Group is a Racketeering Enterprise, as that term is used in 18 U.S.C. § 1961(4), and detailed in Paragraphs 21-23.

A Continuing Pattern of Racketeering Activity (RICO predicate acts)

124.    There has been and still is a continuing pattern of racketeering activity in the way the Pedro Zaragoza Group is operated by the Defendants, as detailed above in Paragraphs 58-113.

Specific Violations of 18 U.S.C. § 1962(b)

125. These Defendants have acquired an interest in, and control of, companies managed by the Pedro Zaragoza Group through a pattern of racketeering activity, as described above.

RICO Damages

126.    As a direct and proximate result of the Defendants' violations of 18 U.S.C. § 1961, *et seq.*, Plaintiffs have been injured in their business and property.  Defendants caused and continue to cause enormous loss to Plaintiffs and Plaintiffs' business, as described above in Paragraph 112.

**Count Three:
Violations of RICO § 1962(c)**

127.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though set forth fully herein.

128.    This Count is against Defendants Lopez, Ramos, Morales, Beuden and CC Restaurant, LP.

129.    Defendants are all "persons" within the meaning of 18 U.S.C. § 1961(3).  At all relevant times, Defendants conducted the affairs of the Pedro Zaragoza Group, which affected interstate and foreign commerce, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

The Enterprise

130.    The Pedro Zaragoza Fuentes Group is a Racketeering Enterprise, as that term is used in 18 U.S.C. § 1961(4), and detailed in Paragraphs 21-23.

A Continuing Pattern of Racketeering Activity (RICO predicate acts)

131.    There has been and still is a continuing pattern of racketeering activity in the way the Pedro Zaragoza Group is operated by the Defendants, as detailed above in Paragraphs 58-113.

Violations of 18 U.S.C. § 1962(c)

132.    Each of the Defendants was employed by and associated with the Pedro Zaragoza Group,

and conducted the business of the Pedro Zaragoza Group, and benefitted financially from their participation in the Pedro Zaragoza Group.  Each of these Defendants knew of the schemes to defraud Jorge Sr. and Jorge Jr. out of money and property, and to interfere with their business, and willfuly assisted the Pedro Zaragoza Group in that effort.

RICO Damages

133.    As a direct and proximate result of the Defendants' violations of 18 U.S.C. § 1961, *et seq.*, Plaintiffs have been injured in their business and property.  Defendants caused and continue to cause enormous loss to Plaintiffs and Plaintiffs' business, as described above in Paragraph 112.

**Count Four:**
**RICO Conspiracy (18 U.S.C. § 1962 (d))**

134.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though set forth fully herein.

135.    This Count is against all Defendants.

136.    Defendants are all "persons" within the meaning of 18 U.S.C. § 1961(3).  At all relevant times, Defendants conducted the affairs of the Pedro Zaragoza Group, which affected interstate and foreign commerce, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1961, *et seq*.

The Enterprise

137.    The Pedro Zaragoza Fuentes Group is a Racketeering Enterprise, as that term is used in 18 U.S.C. § 1961(4), and detailed in Paragraphs 21-23.

A Continuing Pattern of Racketeering Activity (RICO predicate acts)

138.    There has been and still is a continuing pattern of racketeering activity in the way the Pedro Zaragoza Group is operated by the Defendants, as detailed above in Paragraphs 58-

113.

Specific Violations of 18 U.S.C. § 1962(d)

139.    Each Defendant entered into a conspiracy to violate 18 U.S.C. § 1961(a)-(c); that is, each

of the Defendants agreed to commit the predicates acts detailed above, knowing of the

overall objective to defraud Jorge Sr. and Jorge Jr. out of money and property, and to

interfere with their businesses.

RICO Damages

140.    As a direct and proximate result of the Defendants' violations of 18 U.S.C. § 1961, *et

seq.*, Plaintiffs have been injured in their business and property.  Defendants caused and

continue to cause enormous loss to Plaintiffs and Plaintiffs' business, as described above in

Paragraph 112.

**Relief Requested**

141.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter

judgment against Defendants, and seek such relief as specified below for which such relief is

provided by law:

a)  Awarding Plaintiffs damages in an amount to be determined, including but not limited

to all damages and losses suffered by Plaintiffs as a result of the illegal conduct;

b)  Awarding Plaintiffs compensatory, consequential, exemplary, and treble damages, as

available, in an amount to be proven at trial;

c)  Awarding Plaintiffs the financial gain earned by Defendants as a consequence of the

illegal conduct described herein;

d)  Awarding Plaintiffs statutory damages, as available;

e)  Awarding Plaintiffs punitive damages, as available;

f) Awarding Plaintiffs all costs and attorneys' fees to the full extent permitted under the applicable law;

g) Awarding Plaintiffs pre- and post-judgment interest as permitted by law;

h) Awarding any other relief, at law or in equity, the Court may deem just and proper.

## **Jury Demand**

142. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Date: March 9, 2019

Respectfully submitted,

 /s/ Mary Stillinger
**Mary Stillinger**
State Bar No. 19239500
Stillinger & Godinez, PLLC
401 Boston Avenue,
El Paso, Texas 79902
Telephone: (915) 775-0705
Facsimile: (915) 886-7178
Attorney for
Jorge Humberto Zaragoza Fuentes


AND

 /s/ David Pierce
**David Pierce**
State Bar No. 15992700
**Hugo Madrid**
State Bar No. 24060209
Pierce & Madrid, P.C.
221 N. Kansas Street, Suite 1301
El Paso, Texas 79901
Telephone: (915) 351-9772
Facsimile: (915) 351-9976
Attorneys for
Jorge Antonio Zaragoza Villardaga